ACME GROUND RENT COMPANY, Respondent, vs. WERNER and another, Appellants.

*November 22—December 10, 1912.*

*Landlord and tenant: Rent: Premises rendered "untenantable" by fire: Surrender of possession.*

1. In order to be released from payment of rent, under sec. 2196a, Stats. (Supp. 1906: Laws of 1903, ch. 306), the lessee must surrender possession of the leased premises.
2. But under a lease providing, without reference to surrender of possession, that "while the demised premises are untenantable, caused by fire, rent shall cease for such period," no rent was payable for the period of untenantability so caused, even though the lessee retained possession.
3. The premises become "untenantable," within the meaning of such a lease, when by the fire they are rendered absolutely unfit for the beneficial uses for which they were leased. Thus, a store building leased to be used and occupied "for the sale of ladies', misses', and children's wearing apparel, and for no other purpose whatsoever," became untenantable when it was so damaged by fire that it was not possible to use it for the sale of goods, although, with boards nailed over the broken windows and doors, it might be and was in fact used, pending adjustment of insurance, for storing goods damaged by the fire.

SIEBECKER, KERWIN, and BARNES, JJ., dissent.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Reversed.*

For the appellants there was a brief by *W. B. Rubin,* attor-

ney, and *Max Schoetz, Jr.,* and *Horace B. Walmsley,* of counsel, and oral argument by *Mr. Schoetz.*

*A. Huebschmann,* for the respondent.

WINSLOW, C. J.   The defendants in July, 1910, leased of plaintiff a store building in Milwaukee "to be used and occupied as and for the sale of ladies,' misses,' and children's wearing apparel and for no other purpose whatsoever."   The lease also contained the following provisions:

' "And it is further mutually agreed, by the parties hereto, that in case said premises shall be rendered untenantable by fire or other casualty, the lessors may at their option terminate this lease or repair said premises within sixty days, and failing to so repair the same, or upon the destruction of said premises by fire, the term hereby created shall cease and determine, and in case of the damage by fire or other casualty to any building belonging to the lessors, of which building the premises hereby demised are a part, then the lessors may at their option terminate this lease by giving said lessee thirty days' written notice of their election so to do, and thereupon this lease shall terminate thirty days after the service of such notice.   While the demised premises are untenantable, caused by fire, rent shall cease for such period."

On January 6, 1912, a fire occurred and damaged the building so that it was not possible to use the same for the sale of goods.   The damage was not so great, however, but that the doors could be locked and the goods safely remain in the store, and by request of the insurance companies the goods were left on the shelves pending the adjustment of the insurance and until March 19th, when the lease was canceled by the plaintiff and repairs were begun.   There was no competent testimony showing any surrender of possession by the defendants to the plaintiff during this interval, hence it must be considered that the defendants remained in possession.

This action was brought by the plaintiff to recover the rent accruing under the terms of the lease for the period from January 6th to March 22d.   On the facts above stated a ver-

dict for the plaintiff was directed and rendered, and the only question on this appeal is whether that direction was right.

In support of the judgment below we are cited to a number of cases construing the very common statutory provision which declares that a tenant may surrender possession of leased premises which have been destroyed or made untenantable by fire or similar cause and thereby be released from further payment of rent. Sec. 2196a, Stats. (Supp. 1906: Laws of 1903, ch. 306). These cases universally hold that the lessee must surrender possession in order to be released from payment of rent under this provision. Typical cases of this kind are *Johnson v. Oppenheim*, 55 N. Y. 280; *Roach v. Peterson*, 47 Minn. 291, 50 N. W. 80; and *Gay v. Davey*, 47 Ohio St. 396, 25 N. E. 425.

If the defendants' rights in this action were dependent upon the statute, we do not see how the judgment could be disturbed, but they are not. The lease contains provisions on that subject which clearly guarantee to the tenants greater rights and privileges than those given by the statute. These provisions, after giving the lessor certain options as to the termination of the lease, or the making of repairs in case of destruction of the building, or untenantability produced by fire or other casualty, contain this definite and positive clause: "While the demised premises are untenantable, caused by fire, rent shall cease for such period." The words are about as clear as they could well be made. They were unquestionably intended to give the tenants greater rights than those secured to them by the statute, or they would be wholly unnecessary. They say nothing about surrender of possession. They declare, without qualification, that the rent shall cease while the premises are untenantable, and we are not at liberty to add further conditions. If, during the period sued for, the premises were "untenantable" within the meaning of that word as used in the lease, there can be no recovery, notwithstanding possession was retained. *Kip v. Merwin,* 52 N. Y. 542.

There is no doubt that the fire so damaged the store build-
ing that it was impossible to conduct a retail business therein,
*i. e.* it was impossible to use it for the purposes for which it
was leased.    It was, however, possible, by nailing boards over
the broken windows and doors, to use the store as a storage
room for the damaged goods pending the adjustment of the
fire insurance.    This was done, and the question is whether
this fact made the building "tenantable."

The word must have a reasonable construction, taking into
consideration the purposes of the lease and the uses to which
the premises are to be put by the lessee.    Where the evidence
is conflicting it is said to be a question of fact for the jury.
*Weeber v. Hawes,* 80 Minn. 476, 83 N. W. 447; 18 Am. &
Eng. Ency. of Law (2d ed.) 315 (f).

"Untenantability" evidently does not require such com-
plete destruction of the premises that they cannot be used for
any purpose.    A house leased for a dwelling house would quite
surely be "untenantable" if it were rendered unfit for a hu-
man habitation, notwithstanding the fact that the damaged
furniture might safely be stored therein by nailing up win-
dows and doors.    So here, it stands without dispute that this
store was rendered absolutely unfit for the beneficial uses for
which it was leased, and it seems to us that it was as clearly
"untenantable" as if it were a house leased as a residence and
rendered unfit to reside in.

A verdict for the defendant should have been directed.

*By the Court.*—Judgment reversed, and action remanded
with directions to render judgment for the defendant dismiss-
ing the complaint on the merits.

The following opinion was filed January 7, 1913:

SIEBECKER, J. (*dissenting*).    If the "premises shall be ren-
dered untenantable by fire . . . the lessors may at their op-
tion terminate this lease or repair said premises within sixty

days, and failing to so repair the same, . . . the term hereby created shall cease and determine. . . . While the demised premises are untenantable, caused by fire, the rent shall cease for such period." The foregoing portion of the lease controls the case. The lease was not terminated by the lessor under either option, that is, by notice of termination, or by failure to repair within sixty days. Repairing was postponed at the lessee's request so that he might occupy the premises for the purpose of conducting and carrying on negotiations for settlement with the insurance company. This left the lease in full operation and force, and rendered the lessee liable for rent unless he was exempted from rent by the following clause, namely: "While the demised premises are untenantable, caused by fire, rent shall cease for such period." The trial court held defendant was not released from payment of rent from the date of the fire to the time when the lease was canceled by mutual consent, upon the grounds, first, that the premises were held by the lessee and used by him as tenantable for the purpose of business during this period, and secondly, because the lessee elected to treat the lease as in full force and effect and thereby prevented the lessor from making the repairs provided for in the lease. It is clear that the tenant held the premises for this period and used them exclusively for his benefit to enforce a claim against the insurance company. This occupancy of the premises was as clearly one for the conduct of the business of the lessee as if the business had been conducted as it had been before the fire, and it effectually operated to exclude the lessor therefrom and prevent it from making any repairs on the building. Under the circumstances the premises were not untenantable in the sense that the lessee could not use them for his business and as the word was employed in the clause of the lease providing for a cessation of rent. Under the circumstances and conditions it must be held that the tenant elected to treat the premises as tenantable, for he thereby prevented the lessor from acting on

the provisions of the lease as to repairs and for termination of the term by notice.    Hence the relation of landlord and tenant and the liabilities created by the lease continued to the time it was canceled by mutual consent.    The judgment awarded by the trial court should be affirmed.

I am authorized to state that Mr. Justice KERWIN and Mr. Justice BARNES concur in this opinion.