[Nos. 4903–1–II; 5133–8–II.   Division Two.   April 26, 1983.]

PUGET SOUND ATHLETIC CLUB, INC., *Appellant,* v.
SEVEN FOURTEEN MARKET STREET ASSOCIATES,
ET AL, *Respondents.*

*James A. Krueger,* for appellant.

*Richard Jensen, Daniel Hannula, Merrifield Rees,* and *Stanton Cole,* for respondents.

REED, J.—Puget Sound Athletic Club, Inc. (PSAC), appeals from a summary judgment order terminating its lease of an athletic facility from 714 Market Street Associates (Market Street). We reverse and remand for trial on the merits.

In October 1977, PSAC entered into a 10–year lease with 714 Market Street Associates for a portion of a building to be utilized as an athletic facility. Paragraph 8 of the lease agreement required the lessor (Market Street) to bear the expense of keeping the leased premises in good repair, reasonable wear and tear excepted. Paragraph 20 of the lease contained a clause allowing the lessor, at its option, to terminate the lease agreement: "In the event the leased premises are destroyed or injured by fire, earthquake, or other casualty, to such an extent that they are no longer usable by Lessee for the purposes for which they were leased, . . ."

In 1979, PSAC instituted a superior court action against Market Street for breach of the repair covenant contained in paragraph 8. On February 16, 1980, the leased premises were damaged by fire. Shortly thereafter, Market Street announced its intention to terminate the tenancy under paragraph 20 of the lease on the grounds that the premises were "injured" to the extent that they could no longer be used as an athletic facility.

PSAC then sought to enjoin Market Street from terminating the lease, taking the position that the leased prem-

ises were still usable as an athletic facility. In support of this position PSAC submitted numerous affidavits indicating that the total cost of repair would amount to approximately $250,000 and that the premises could be reopened for use on a limited basis within 2 weeks. Market Street, on the other hand, presented affidavits indicating that the total cost of repair would exceed $1 million and that more than $50,000 would have to be expended to make the premises temporarily available during reconstruction.

After reviewing the pleadings and affidavits submitted by the parties, the trial court concluded that, even when viewed in the light most favorable to PSAC, the evidence established that the leased premises were not usable as an athletic facility immediately following the fire. Accordingly, a summary judgment order was entered in favor of Market Street.

On appeal PSAC argues that summary judgment allowing termination of the lease was inappropriate because there was a genuine issue of material fact as to whether the leased premises were still usable as an athletic facility after the fire. Market Street, on the other hand, maintains that there were no genuine factual questions in this regard. Market Street has also moved to dismiss this appeal on the grounds that it has been rendered moot by the subsequent lease of the damaged premises to third parties.

■ We turn first to Market Street's motion to dismiss this appeal. Market Street contends that any issue regarding the termination of the lease has been rendered moot because of PSAC's failure to post a supersedeas bond and the subsequent lease of the damaged premises to third parties. We disagree. The Superior Court's judgment simply terminated the lease and placed Market Street in possession of the damaged premises. It did not provide for the sale or transfer of these premises. Under these circumstances, PSAC's failure to post a supersedeas bond to prevent Market Street from transferring the damaged premises to third parties does not affect the validity of its appeal seeking review of the proceedings which led to the

original judgment. *See generally* Annot., *Reversal as Affecting Purchase of Property Involved in Suit, Pending Appeal Without Supersedeas,* 36 A.L.R. 421, § 3 (1925). Market Street, by presuming to act as if its ownership were unfettered, simply assumed the risk its judgment would survive an appeal. It has not. Clearly, Market Street cannot moot PSAC's appeal by its own action. The failure to or inability of PSAC to supersede the judgment neither waives the right to contest the judgment, nor estops PSAC from pursuing its appeal. If, as suggested by Market Street, its new lessees have acquired interests protected by RAP 12.8,[1] a question we do not resolve, the right to assert those interests is theirs alone.

We next turn to the issue regarding the propriety of the trial court's termination of the lease. The Washington courts have never construed a lease provision identical to the one at issue in the instant case (*i.e.,* a provision for termination if the premises are damaged to the extent that they are no longer usable for the purposes for which they were leased). However, the courts of numerous jurisdictions, including Washington, have construed lease provisions giving a landlord authority to terminate in the event the leased premises are rendered "untenantable." *See, e.g., Mottman Mercantile Co. v. Western Union Tel. Co.,* 3 Wn.2d 62, 100 P.2d 16 (1940); *Barry v. Herring,* 153 Md. 457, 138 A. 266 (1927); *see generally* Annot., *Condition of Premises Within Contemplation of Provision of Lease or Statute for Cessation of Rent or Termination of Lease in Event of Destruction of or Damage to Property as Result of Fire,* 118 A.L.R. 106, § II(*c*) (1939). These courts have

---

[1]RAP 12.8 reads as follows:

"If a party has voluntarily or involuntarily partially or wholly satisfied a trial court decision which is modified by the appellate court, the trial court shall enter orders and authorize the issuance of process appropriate to restore to the party any property taken from that party, or the value of the property. An interest in property acquired by a purchaser in good faith, under a decision subsequently reversed or modified, shall not be affected by the reversal or modification of that decision."

uniformly held that leased premises are not rendered "untenantable" if they can be restored by *ordinary* repairs without unreasonable interruption of the tenancy. *Mottman Mercantile Co. v. Western Union Tel. Co., supra; Luis v. Ada Lodge 3, IOOF,* 77 Idaho 392, 294 P.2d 1095 (1956). Whether repairs are "ordinary" and can be made without "unreasonable" interruption of the tenancy is a question of fact and involves consideration of several factors including (1) the value of the damaged property, (2) the nature and extent of the required repairs, (3) the length of time the premises will remain *uninhabitable* or unusable during restoration, and (4) the duration of the lease. *Barry v. Herring,* 153 Md. at 460; *Presbyterian Distribution Serv. v. Chicago Nat'l Bank,* 28 Ill. App. 2d 147, 171 N.E.2d 86 (1960).

We believe the foregoing criteria are applicable in the instant case. In our view the present lease provision is equivalent to a provision providing for termination where the premises are rendered untenantable. The present provision can reasonably be construed as allowing termination of the lease in the event the premises are rendered "untenantable" for the purposes for which they were leased. Consequently, the specific issue confronting this court is whether the leased premises could be restored by ordinary repairs without unreasonable interruption of the tenant's use. The existence of any issue of material fact in this regard would conclusively establish that the trial court's order granting summary judgment was inappropriate. *Morris v. McNicol,* 83 Wn.2d 491, 519 P.2d 7 (1974).

The evidence in the instant case, viewed in the light most favorable to PSAC, indicates that the athletic facility could have been back in business, albeit on a limited basis, shortly after the fire. Affidavits submitted by PSAC indicated that at least 9 of the 14 functions provided by the athletic facility could be made available to club members within 2 weeks' time. Considered in conjunction with the fact that there were 7 years remaining on the lease, this minimal period of time could not be said, as a matter of

law, to constitute an "unreasonable" interruption of the tenant's use of the leased premises. It is true that PSAC's evidence regarding the required repairs indicated that they would involve structural restoration costing approximately $250,000. However, the evidence further showed that the damaged property was a valuable asset with a rental value of over $1 million for the lease term. We believe this evidence raised a genuine issue for the trier of fact as to whether the required restoration constituted "ordinary" repairs. Accordingly, we hold that it was inappropriate for the trial court to dispose of the controversy in a summary judgment fashion.

For the reasons stated, we reverse the summary judgment and remand the case for trial on the merits.

PETRICH, C.J., and WORSWICK, J., concur.